**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| MOSE TYRONE GILKEY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:14-cv-02924-STA-cgc |
| v. | ) | Cr. No. 2:12-cr-20079-STA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER TO MODIFY THE DOCKET,
ADDRESSING PENDING MOTION,
DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended § 2255 Motion") filed by Movant, Mose Tyrone Gilkey, Bureau of Prisons register number 12575-076, an inmate at the United States Penitentiary in Pollock, Louisiana (Am. § 2255 Mot., *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4) and Gilkey's Motion for Post-Conviction Discovery (Mot. for Disc., *id.*, ECF No. 1).  For the reasons stated below, the Court **DENIES** the Motion for Post-Conviction Discovery and **DENIES** Movant's Amended § 2255 Motion.

## I.        BACKGROUND

### A.        Case Number 12-20079

On March 29, 2012, a federal grand jury returned a two-count indictment against Gilkey. (Indictment, *United States v. Gilkey*, No. 2:12-cr-20079-STA (W.D. Tenn.), ECF No. 1 (sealed).)

On June 26, 2012, the grand jury returned a six-count superseding indictment against Gilkey. (Superseding Indictment, *id.*, ECF No. 12 (sealed).) Counts 1 and 2 charged Gilkey, a convicted felon, with possessing a Charter Arms Corp. .44 special caliber revolver (Count 1) and Smith & Wesson .44 special caliber ammunition (Count 2) on or about December 3, 2011, in violation of 18 U.S.C. § 922(g)(1). Count 3 charged Gilkey, a convicted felon, with possessing a Smith & Wesson .41 magnum caliber revolver on or about June 5, 2012, in violation of 18 U.S.C. § 922(g)(1). Count 4 charged that, on or about June 5, 2012, Gilkey possessed a Smith & Wesson .41 caliber magnum revolver from which the manufacturer's serial number had been removed, obliterated and altered, in violation of 18 U.S.C. § 922(k). Count 5 charged that, on or about June 5, 2012, Gilkey used a falsely made, forged, counterfeited and altered seal of the Bureau of Indian Affairs that was affixed to an identification card identifying him as "Ahnuck Musa Bey" for the purpose of concealing from law enforcement that there was an outstanding warrant for his arrest and that his driver's license was suspended, in violation of 18 U.S.C. § 506(a)(2). Count 6 charged that, on or about June 5, 2012, Gilkey did, with fraudulent intent, possess a falsely made, forged, counterfeited and altered seal of the Bureau of Indian Affairs and presented identification bearing that seal to law enforcement during a traffic stop to conceal that there was an outstanding federal warrant for his arrest and that his driver's license was suspended, in violation of 18 U.S.C. § 506(a)(3).

The factual basis for these charges is stated in the presentence report ("PSR"):

> 4. According to the investigative file, on December 3, 2011, officers were responding to a weapons violation call at St. Elmo Road and Schoolfield Road in Memphis, Tennessee when they observed **Mose Tyrone Gilkey, a/k/a "Ahnuck Musa Bey,"** operating a 2005 blue Infinity, Tennessee license plate #492-SWB, traveling at a high rate of speed in the opposing lane of traffic. The officers activated their emergency lights and sirens in an attempt to conduct a traffic stop; however, **Gilkey** turned off his vehicle's lights, swerved through traffic, and disregarded a stop sign. **Gilkey** attempted to execute a left turn but

lost control of his vehicle and struck a tree behind a residence at 3965 Schoolfield Road. The officers approached the vehicle and observed a firearm in the open glove compartment. **Gilkey** was removed from the vehicle and the officers requested his identification. **Gilkey** was unable to provide any identification, but a National Crime Information Center (NCIC) check revealed his driver's license was revoked and he had three outstanding warrants. The officers began to handcuff **Gilkey,** at which time he began to struggle. During the struggle, officers felt several large bulges in **Gilkey's** jacket pockets. **Gilkey** was arrested and a search revealed **several large bundles of money ($13,994.00), nine rounds of .44 caliber ammunition, and a baby bottle containing promethazine (105.4 grams)** on **Gilkey's** person. The firearm, a **Charter Arms Corporation Revolver loaded with five live rounds**, and two folding pocket knives were recovered from the vehicle. **Gilkey** was placed into the officers' vehicle, at which time be attempted to destroy evidence by crushing several pills that were in his possession. The officers recovered nine pills, which were identified as **Xanax**, along with one piece of a blue pill (type unknown).

5.    On June 5, 2012, officers were responding to a weapons violation call to 3044 Peggy Road in Memphis, Tennessee when they observed **Gilkey** operating a 2003 Dodge Intrepid, Tennessee license plate #C71-62T. The officers also observed the vehicle's windshield was damaged and a check of the vehicle's registration revealed that the registration was not on file. The officers activated their emergency lights and sirens in an attempt to conduct a traffic stop; however, **Gilkey** continued through the intersection of Peggy Road and Warford Street and did not stop until he parked in the driveway of 3044 Peggy Road. The officers approached the vehicle and requested **Gilkey's** identification, at which time **Gilkey** advised that he was an Indian and was not required to possess a Tennessee driver's license. When **Gilkey** was again asked for identification, he refused and also could not provide the officers with proof of vehicle registration or insurance. **Gilkey** was detained, at which time he provided the officers with a **picture identification card bearing Gilkey's picture, the name "Ahnuck Musa Bey," the title "Native American National Union," United States Department of State number 45413912-3, and the "life date" of "02-7-1982." The card reflected a counterfeit seal of the Bureau of Indian Affairs. Gilkey** insisted that his name was "Ahnuck" and advised the officers that they could retrieve his paperwork from the vehicle. When the officers did so, they observed a piece of paper on top of a stack of paperwork that bore **Gilkey's** true name and Social Security number. A check revealed that **Gilkey** had an active federal warrant (#1220079) for Felon in Possession of a Firearm and that his driver's license was revoked.

6.    The paperwork was reviewed and found to include UCC Financing Statements; Internal Revenue Service documentation for the "Mose Tyrone Gilkey Estate" with Employer Identification Number 45-6853856 and for the Native American International Union with Employer Identification Number 45-4139123; a Native American International Union International Irrevocable Trust

Agreement and other Native American International Union documents; an NAIU Governing Law document; an Affidavit of Articles of Unincorporated Association; an International Law Nationality Affidavit of Private Aboriginal Indigenous American Nationality; Indigenous Baptismal Record of Live Birth; a Private Security Agreement; an Affidavit of Truth; a Hold Harmless and Indemnity Agreement; an International Law Nationality Affidavit and Notice in Admiralty of Private Aboriginal Constitution Right to Travel; Moorish Science Temple of America and Moorish Holy Temple of Science of the World documents; an NAIU Genealogy Certification; Native American International Union Color of Authority Notices for Officers; and Ministers & Nationals for the Chickasaw Region Four Central Shaykhakhu-Sagamoor Aboriginal Nation of Muurs documentation. Multiple copies of the "Plank Road Newsletter" were also recovered from **Gilkey's** vehicle. The newsletter includes the heading "All District Attorneys are illegal; All Judges are illegal and do not allow the <u>REAL CONSTITUTION</u> in the Courtrooms!" Also in the newsletter is the following: "<u>Mayor AC Wharton</u> and <u>John T. Fowlkes</u> are best friends and true SLAVERS; they are longtime violators of the law and ethics, and it is clear they are attempting to remove the Chakchiuma Sektchi People from public access..."

7. The officers searched the vehicle and discovered a **Smith & Wesson revolver, loaded with five live rounds and one spent round**, in the glove compartment. The serial number could not be read as it had been altered. Officers also discovered a white ski mask underneath the firearm. The firearm was taken to evidence where the grip was removed, revealing the second, unaltered serial number. A check revealed the firearm (valued at $813.00) was taken during a residential burglary on November 23, 2008, from victim Dixie Lay in Memphis, Tennessee, report #0781950596. The officers later discovered that the vehicle was registered to Uteka Westbrook at 4864 Libby Lane, Memphis, Tennessee. **Gilkey** refused to provide a written statement.

8. An examination of the firearms and ammunition conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives revealed the firearms possessed by **Gilkey**, a Charter Arms Corporation, Bulldog Pug .44 special caliber revolver, serial #1079062; and a Smith & Wesson model 657-3 .41 caliber revolver, serial #BSK2115; and .44 caliber ammunition, were not manufactured in Tennessee and therefore, at some point, traveled in interstate and/or foreign commerce. A criminal history search revealed **Gilkey** is a convicted felon.

(PSR ¶¶ 4-8.)

Gilkey retained Jacob E. Erwin to represent him in the criminal case. (*See* Min. Entry, *United States v. Gilkey,* No. 2:12-cr-020079-STA (W.D. Tenn.), ECF No. 9; Min. Entry, *id.*, ECF No. 18; Not. of Appearance, *id.*, ECF No. 20.) At a special report date on April 4, 2013,

Gilkey advised the Court that he wanted to proceed *pro se*. The Court set the matter for trial on

June 3, 2013, and directed Erwin to act as "elbow counsel" for Gilkey. (Min. Entry, *id.*, ECF

No. 37.) The Court issued an order on April 5, 2013, that stated, in pertinent part, as follows:

> On April 4, 2013, the Court conducted a special report date with the parties to discuss the current status of the case. Defendant addressed the Court and repeatedly stated that he was "firing" his retained attorney. Counsel for Defendant added that he had represented Defendant for a number of years and that Defendant was suddenly invoking "sovereign citizen" defenses.
>
> **Trial in this matter is currently set for June 3, 2013, and will proceed as scheduled.** . . . Defendant should carefully consider whether he will represent himself at trial or continue to have representation through his retained attorney. Defendant should be prepared to announce his decision about his representation at the pretrial conference. In the event Defendant chooses to represent himself, Defendant should be prepared to respond to questions from the Court about his understanding of the proceedings, the charges against him, the facts of the case, the possible penalty if convicted, and other factors. In the meantime, Defendant is strongly encouraged to cooperate with his attorney so that counsel can investigate and prepare any available defenses. . . .

(Order, *id.*, ECF No. 38.)

On May 14, 2013, Gilkey filed an *in forma pauperis* motion. (Appl. to Proceed in

District Court Without Prepaying Fees or Costs (Short Form), ECF No. 39 (sealed).) On May

14, 2013, the Court set a status conference for May 21, 2013. (Setting Letter, *id.*, ECF No. 40.)

On May 21, 2013, Erwin filed a motion to continue because he was not available for the status

conference. (Mot. to Continue, *id.*, ECF No. 42.) At the scheduled status conference on May 21,

2013, the Court denied the motion for a continuance because the presence of Erwin, who was

acting as "elbow counsel," was not required. The Court addressed Gilkey and asked whether he

wanted to have appointed counsel or continue *pro se.* Gilkey did not respond, and the Court

construed his silence as a desire to proceed *pro se.* The Court stated that the trial was scheduled

for June 3, 2013, and instructed Gilkey that it was his responsibility to familiarize himself with

the Federal Rules of Criminal Procedure.  The Government provided discovery to Gilkey.  (Min. Entry, *id.*, ECF No. 43.)

At the pretrial conference on June 3, 2013, Gilkey's request for a continuance to file additional documents and subpoena witnesses was denied.  The Court questioned Gilkey about his legal training and knowledge of the law and criminal procedure.  Gilkey refused to respond to the Court's questions.  The Court reviewed the charges in the superseding indictment and the penalties that could be imposed and warned Gilkey of the danger of self-representation.  Gilkey elected to proceed *pro se* with Erwin as "elbow counsel."  (Min. Entry, *id.*, ECF No. 46.)

On the scheduled trial date of June 4, 2013, Gilkey changed his mind about proceeding *pro se* and asked to be represented by counsel.  Gilkey also requested a continuance to prepare and file pretrial motions.  Gilkey was questioned by the Court about his decision.  The Government opposed the motion for a continuance.  The Court granted Gilkey's motions, appointed Erwin as counsel, and gave him until June 18, 2013, to file pretrial motions.  The trial was reset for August 3, 2013.  (Min. Entry, *id.*, ECF No. 49.)

On July 29, 2013, Erwin addressed the Court and requested a report date.  (Min. Entry, *id.*, ECF No. 50.)  The Court set a report date for August 1, 2013.  (*Id.*)  At the report date, it was determined that the matter would proceed to trial on August 5, 2013.  (Min. Entry, *id.*, ECF No. 51.)

A jury trial on the charges against Gilkey commenced on August 5, 2013.  (Min. Entry, *id.*, ECF No. 54; Min. Entry, *id.*, ECF No. 56; Min. Entry, *id.*, ECF No. 57.)  On August 7, 2013, the jury returned a guilty verdict on every count of the Superseding Indictment.  (Min. Entry, *id.*, ECF No. 57; Jury Verdict, *id.*, ECF No. 58.)

The sentencing was set for November 7, 2013. (Order, *id.*, ECF No. 62.) On October 21, 2013, the Clerk docketed various *pro se* documents submitted by Gilkey (Notice, *id.*, ECF No. 64), including a letter to his attorney advising that "your services are terminated forthwith; you are to provide no further services on my behalf." (Undated Letter to Jacob Edwin Erwin, *id.*, ECF No. 64-2.)

At the hearing on November 7, 2013, Gilkey made an oral request to fire Erwin, and Erwin made an oral motion to withdraw based on ethical considerations. Gilkey also stated that he had not received the PSR until November 4, 2013. The Court directed Erwin to file a written motion for leave to withdraw and directed Gilkey to file his *pro se* objections to the PSR and to serve a copy on the Clerk and the Government. The parties were advised that the sentencing hearing was reset for December 10, 2013. (Min. Entry, *id.*, ECF No. 66.)

On November 19, 2013, the sentencing hearing was advanced to November 25, 2013. (Setting Letter, *id.,* ECF No. 67.) On November 25, 2013, Gilkey notified the Court that he was not prepared to proceed because he had no means of notifying his witnesses of the new sentencing date. The Court reset the sentencing hearing for December 10, 2013. Erwin was not present at that hearing, and the case manager was directed to notify Erwin that he must be present at the next hearing date. (Min. Entry, *id.*, ECF No. 68.)

On December 9, 2013, Gilkey filed a *pro se* motion to dismiss for lack of territorial jurisdiction. (Mot. to Dismiss for Lack of Territorial Jurisdiction, *id.*, ECF No. 69.) On December 10, 2013, Erwin filed a motion seeking leave to withdraw. (Mot. to Withdraw, *id.*, ECF No. 70.)

At the hearing on December 10, 2013, the Court sentenced Gilkey to a term of imprisonment of three hundred months, to be followed by a three-year period of supervised

release.  (Min. Entry, *id.*, ECF No. 71.)[1]  Gilkey was *pro se* at that hearing, and Erwin, his "elbow counsel," was present.  At the conclusion of the hearing, the Court advised Gilkey of his appeal rights and handed him the appeal package.  (*Id.*)  The Court issued an order on December 10, 2013, granting Erwin's motion for leave to withdraw.  (Order, *United States v. Gilkey,* No. 2:12-cr-20079-STA (W.D. Tenn.), ECF No. 72.)  Judgment was entered on December 11, 2013. (J. in a Criminal Case, *id.*, ECF No. 73 (sealed).)

On December 19, 2013, Gilkey filed a *pro se* Notice of Appeal, accompanied by an *in forma pauperis* motion that contained no financial information.  (Not. of Appeal, *id.*, ECF No. 75; Appl. for Leave to Proceed Without Fee, *id.*, ECF No. 76.)  In an order issued on January 7, 2014, the Court denied the *in forma pauperis* motion and directed Gilkey to provide a completed application to proceed *in forma pauperis* within twenty days.  (Order, *id.*, ECF No. 79.)  On January 27, 2014, Gilkey filed an *in forma pauperis* motion that was signed but otherwise blank and a printout of his commissary purchases.  (Appl. to Proceed in District Court Without Prepaying Fees or Costs (Short Form), *id.*, ECF No. 80.)  The Court issued an order on January 28, 2014, denying leave to proceed *in forma pauperis* because "[t]he application is not completed and does not contain a certified inmate trust fund account statement."  (Order at 1, *id.*, ECF No. 81.)  Gilkey was ordered, for the second time, to file a properly completed *in forma pauperis* application within twenty days.  (*Id.*)  Gilkey failed to respond to that order.  On February 28, 2014, the Sixth Circuit Court of Appeals dismissed Gilkey's appeal for want of prosecution due to his failure to file a properly completed *in forma pauperis* application.  *United States v. Gilkey,* No. 13-6633 (6th Cir.).

---

[1] Gilkey was sentenced to concurrent terms of 300 months on Counts 1, 2 and 3 and to concurrent terms of 60 months on Counts 4, 5 and 6, with all sentences to run concurrently.

**B.      Case Number 14-2924**

On November 28, 2014, Gilkey filed a document, titled "MOTION FOR POST-CONVICTION DISCOVERY PURSUANT TO RULE 6 OF THE RULES GOVERNING §2255 HABEAS PROCEEDINGS," that the Clerk erroneously docketed as a § 2255 motion.  (Mot. for Disc., *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 1.)[2]

On December 3, 2014, Gilkey filed a *pro se* § 2255 Motion.  (§ 2255 Mot., *id.*, ECF No. 3.)[3]  On December 4, 2014, Gilkey filed his Amended § 2255 Motion, which is intended to supersede his original filing.  (Am. § 2255 Mot., *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4.)[4]  The Amended § 2255 Motion presents the following issues:

1.      "Petitioner was deprived of his Sixth Amendment right to counsel, where counsel failed to file a direct appeal, after specifically being told to" (*id.* at PageID 34 (irregular capitalization omitted); *see also* Attachment 1, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4-1);

2.      "Lack of Territorial Jurisdiction" (Am. § 2255 Mot. at PageID 5, *id.*, ECF No. 4; *see also id.* at PageID 5-7; Attachment 2, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4-2); and

---

[2] The Clerk is directed to modify the docket to reflect that the filing is a discovery motion, not a § 2255 motion.

[3] The Clerk is directed to modify the docket to reflect that this filing is the original § 2255 motion, not an amendment.  The Clerk is further directed to modify the docket to reflect that the action was commenced on December 3, 2014, the date on which the original § 2255 Motion was received.  *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

[4] The Clerk is directed to modify the docket to reflect that this filing is an amended § 2255 motion, not a second amendment.

3.   "Lack of Jurisdiction Pursuant to Article 2)(3) [sic] of the U.S. Constitution" (Am. § 2255 Mot. at PageID 7, *id.*, ECF No. 4; *see also id.* at PageID 7-8; Attachment 3, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4-3).

## II.   THE PENDING MOTION

In his Motion for Post-Conviction Discovery, Gilkey seeks production of "all discovery material, i.e., Police Report, FBI 302 Reports, DEA 6's, Witness Reports and a copy of the Search and Arrest Warrant." (Mot. for Disc. at 2, *id.*, ECF No. 1.) Gilkey asks that proceedings in this matter be stayed until he has received and had the opportunity to review the requested discovery. (*Id.* at 2.) He also seeks leave to supplement his § 2255 Motion "in relationship to the issues presented, or any other matter that may be deemed relevant to these proceedings." (*Id.* at 1-2.)

Habeas petitioners and § 2255 movants do not have an automatic right to discovery. *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009). Discovery in § 2255 cases is controlled by Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"), which states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(b) provides, in part, that "[a] party requesting discovery must provide reasons for the request." *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding"). Rule 6 is meant to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969). *Bracy v. Gramley*, 520 U.S. 899, 909 (1997). Thus,

where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris*, 394 U.S. at 300.

"Good cause" is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (same). Rather, the requested discovery must be materially related to claims raised in the habeas petition and be likely to "resolve any factual disputes that could entitle [the petitioner] to relief." *Williams*, 380 F.3d at 975 (internal quotation marks and citation omitted); *see Bracy*, 520 U.S. at 908-09 (allowing discovery relevant to "specific allegations" of fact in support of a claim of constitutional error); *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (discovery provides petitioner "that extra evidence" he needs to prove or strengthen his case); *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests"). Rule 6(a) does not permit a "fishing expedition masquerading as discovery." *Stanford*, 266 F.3d at 460.

Gilkey has not shown good cause for the discovery he seeks. As a preliminary matter, the criminal docket reflects that the Government provided a copy of the discovery to Gilkey while he was proceeding *pro se*. (*See* Min. Entry, *United States v. Gilkey,* No. 2:12-cr-20079-STA (W.D. Tenn.), ECF No. 43.) Even if the instant discovery request seeks material that was not provided during pretrial discovery—which Gilkey does not allege—the material sought has no bearing on the claims raised in the Amended § 2255 Motion, which address counsel's supposed failure to file a direct appeal and the jurisdiction of the Court over the criminal case.

Gilkey is not entitled to conduct a fishing expedition to search for additional issues to be raised in this proceeding. The motion for Post-Conviction Discovery is DENIED.

## III.                  THE LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), § 2255 Rules. "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotation marks omitted). When the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton*

*v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

IV.        **ANALYSIS OF MOVANT'S CLAIMS**

A.        **The Alleged Failure to File a Direct Appeal (Claim 1)**

In Claim 1, Gilkey alleges that he was deprived of his Sixth Amendment right to counsel because his attorney failed to file a direct appeal after being asked to do so.  (Am. § 2255 Mot. at PageID 34, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4; *see also* Attachment 1, *id.*, ECF No. 4-1 (same).)  An attachment to the Amended § 2255 Motion refers to an attached affidavit (Attachment 1, *id.*, ECF No. 4-1), but no affidavit has been supplied.

In *Rodriguez v. United States*, 395 U.S. 327, 340 (1969), the Supreme Court held that the failure of defense counsel to file a notice of appeal despite being instructed to do so by his client constitutes *per se* ineffective assistance of counsel, without regard to the legal merit of any issues that might be raised on direct appeal.  *See also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the

defendant's wishes.") (citation omitted); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). The Sixth Circuit has "emphasize[d] . . . that a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis." *Ludwig*, 162 F.3d at 459; *see also Regalado v. United States*, 334 F.3d 520, 525-26 & n.3 (6th Cir. 2003) (an expression of a defendant's "desires" or "wishes" is not equivalent to an express instruction).

Gilkey is not entitled to relief on Claim 1 and is not entitled to an evidentiary hearing, for two reasons. First, Gilkey discharged his attorney and proceeded *pro se* at the sentencing hearing, with Erwin acting only as "elbow counsel." Because Gilkey waived his right to be represented by counsel, he cannot complain of ineffective assistance. As the Court of Appeals has explained:

> Holmes represented himself at sentencing, and only had an attorney present as stand-by counsel. Nonetheless, Holmes complains that his trial counsel, who was at the sentencing in the role of stand-by counsel, did not object to the calculation of Holmes's criminal history score. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Holmes knowingly and voluntarily elected to assert his *Faretta* rights and proceed at sentencing *pro se*. He does not challenge that waiver. Because he validly waived his right to counsel, his claim for ineffective assistance at sentencing fails. "By exercising his constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel." *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008). Even if standby counsel failed to act in some manner, such failure is an incidental effect of Holmes's decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim. *See id.* at 697 ("To the extent [stand-by counsel] failed to act during trial, [the criminal defendant] merely suffered the consequences of his decision to proceed *pro se*."). We will not impose upon stand-by counsel the same obligations that an attorney would have if Holmes were not proceeding *pro se*.

*Holmes v. United States,* 281 F. App'x 475, 480-81 (6th Cir. 2008); *see also Censke v. United States,* No. 2:14-cv-179, Criminal Case No. 2:08-cr-19, 2014 WL 4542488, at *6 (W.D. Mich.

Sept. 11, 2014) ("Censke wants the best of both worlds; the ability to represent himself and when things go awry to blame his standby counsel. When a defendant exercises his right to represent himself, he necessarily waives his constitutional right to be represented by counsel. . . . Cenke's [sic] standby counsel was appointed to assist Censke not represent him. Therefore, all claims of ineffective assistance of counsel against standby counsel do not entitle Censke to relief."); *Fletcher v. United States,* No. 3:12-cv-00830, 2013 WL 2237880, at *8 (M.D. Tenn. May 21, 2013) (same).

Second, Gilkey personally filed a timely notice of appeal. Therefore, even if his elbow counsel had a duty to file a notice of appeal upon request, Gilkey suffered no prejudice.

Claim 1 is without merit and is DISMISSED.

### B.     The Alleged Lack of Territorial Jurisdiction (Claim 2)

In Claim 2, Gilkey avers that there was a lack of territorial jurisdiction over the criminal case. (Am. § 2255 Mot. at PageID 35, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.) ECF No. 4.) He explains that "[t]he United States (28 USC; 3002) lack territorial jurisdiction. The current system of enforcement of the Title 18 of the United States Code Annotated is repugnant to and violative of Article, 1., Section 8., Clause 17. of the Constitution and its implementing statute, 40 U.S.C. 255[.]" (*Id.*)[5] This argument is presented, in more

---

[5] The provision in question grants Congress the power

[t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . . .

U.S. Const. art. I, § 8, cl. 17.

detail, in an attachment to the Amended § 2255 Motion. (Attachment 2, *Gilkey v. United States,* No. 2:14-cv-02924-STA-cgc (W.D. Tenn.), ECF No. 4-2.)

Claim 2 refers to 40 U.S.C. § 255, which is currently codified at 40 U.S.C. § 3111. That provision appears in Title 40 of the United States Code, titled "Public Buildings, Property, and Works." It has no bearing on Movant's convictions for violating 18 U.S.C. §§ 922(g), 922(k) and 506(a)(2)-(3) because those statutes do not require that the offense be committed on federal property.

Federal jurisdiction over the criminal case was conferred by 18 U.S.C. § 3231, which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Applying this provision, the Sixth Circuit has flatly rejected similar challenges to the jurisdiction of the federal courts over violations of federal criminal statutes:

> Here, contrary to Bryson's argument, the district court properly exercised jurisdiction over his offenses. Although Bryson maintained that his offenses did not occur within the territorial jurisdiction of the United States, it is clear that 18 U.S.C. § 3231 gives the federal courts original and exclusive jurisdiction over federal crimes. *See United States v. Allen*, 954 F.2d 1160, 1165-66 (6th Cir. 1992). The district court indisputably had subject matter jurisdiction over his indictment for violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c). Federal courts have exclusive jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231; the permission of the states is not a prerequisite to exercise that jurisdiction. *See United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992).

*United States v. Bryson*, No. 00-3619, 2001 WL 700816, at *2 (6th Cir. June 15, 2001); *see also United States v. Martin*, 318 F. App'x 313, 316 (6th Cir. 2008) (rejecting arguments that indictment had to allege territorial jurisdiction); *United States v. Callan*, 72 F. App'x 349, 350-51 (6th Cir. 2003) (rejecting argument that federal jurisdiction was lacking over criminal case involving firing or tampering with vessels because it involved a civil matter in admiralty); *United*

*States v. Hamilton*, 263 F.3d 645 (6th Cir. 2001) (rejecting a defendant's contention that Louisville, Kentucky is outside the jurisdiction of the federal government; "This is a frivolous argument that ignores the basic principles of federalism. The fact that Kentucky has sovereignty within its boundaries does not bar the United States from having concurrent jurisdiction to indict and prosecute Hamilton for federal crimes occurring within those same boundaries."); *United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994) (rejecting as "completely without merit and patently frivolous" the argument that defendant cannot be prosecuted for income tax violations because he is solely a resident of Michigan and not of any "federal zone"); *United States v. Schooler*, Nos. 3:10-cr-134, 3:12-cv-201, 2012 WL 2814322, 2012 WL 2814322 (S.D. Ohio July 10, 2012) (rejecting argument about territorial limitation of § 922(g)) (report and recommendation), *adopted*, 2012 WL 2975207 (S.D. Ohio July 20, 2012).

### C.   The Alleged Lack of Jurisdiction Under Article II, § 3 (Claim 3)

In Claim 3, Gilkey argues that there was a "[l]ack of [j]urisdiction [p]ursuant to Article 2)(3) [sic] of the Constitution." (Am. § 2255 Mot. at PageID 37, *id.*, ECF No. 4; *see also* Attachment 3, *id.*, ECF No. 4-3.) Specifically, Gilkey claims that "because his custody and indictment were achieved in violation of the 'Take Care Clause' of Art II § 3 of the U.S. Constitution[,] the Federal Rules of Criminal Procedure (F.R.C.R.P.) and 28 U.S.C. 516, 547 the court lacked 'subject matter jurisdiction' in his case." (Am. § 2255 Mot. at PageID 37, *id.*, ECF No. 4.) Although Gilkey's argument is difficult to decipher, he appears to mean that his case was not properly commenced because the FBI did not swear out a criminal complaint. (Attachment 3 at 2, *id.*, ECF No. 4-3.)

Article II, § 3 of the Constitution provides that the executive "shall take Care that the Laws be faithfully executed . . . ." This provision vests prosecutorial power in the executive

branch of government, *see, e.g., In re Aitken Cnty.,* 725 F.3d 255, 262-63 (10th Cir. 2013), which

includes the United States Attorneys, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*

561 U.S. 477, 517 (2010); *Caldwell v. Cunningham,* Nos. 3 10 0288, 3:10-mc-0019, 2010 WL

1170132, at *1 (M.D. Tenn. Mar. 24, 2010); *Bonner v. Family Independence Agency,* No. 04-

74574, 2005 WL 3478362, at *8 (E.D. Mich. Dec. 20, 2005).  The First Circuit Court of Appeals

has recently rejected the argument advanced by Gilkey:

> In a supplemental pro se brief, Aponte–Sobrado claims that because "the
> FBI chose not to swear out a complaint in this case, government attorneys lacked
> authority under 28 U.S.C. § 547 to seek an indictment or prosecute on behalf of
> the 'United States'" and that a prosecution under such circumstances also violates
> the "Take Care" Clause of Article II, Section 3 of the United States Constitution,
> and Federal Rules of Criminal Procedure 3 and 4.  The record contains no
> evidence about whether a criminal complaint was sworn in this case.  A
> complaint, however, is not a prerequisite to the initiation of a criminal
> prosecution:
>
>> No complaint is needed ... if a more formal determination of probable
>> cause is made first.  If an indictment has been returned or an information
>> filed prior to the arrest, a warrant may be issued on this ground alone
>> pursuant to Rule 9.  In such a case, probable cause has already been
>> established and there is no need for a complaint.
>
> 1 Charles Alan Wright et al, *Federal Practice and Procedure* § 41 (4th ed. 2014)
> (footnotes omitted).

*United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 97 (1st Cir.), *cert. denied*, 135 S. Ct. 307

(2014) and *cert. denied sub nom. Aponte-Sobrado v. United States,* 2015 WL 4711578 (U.S. Oct.

5, 2015) and *cert. denied sub nom. Diaz-Colon v. United States,* 2015 WL 5774556 (U.S. Oct. 5,

2015); *see also United States v. Bailey,* Criminal No. 04-24, 2014 WL 5761069, at *2 (W.D. Pa.

Nov. 5, 2014) ("In defendant's case, an indictment was returned against him, thus probable cause

was established, and there was no need for the filing of a complaint.").

Here, a federal grand jury returned an indictment and a superseding indictment against

Gilkey and, therefore, no criminal complaint was required.

Claim 3 is also meritless because the alleged procedural irregularities do not implicate the subject-matter jurisdiction of the federal courts. Subject-matter jurisdiction refers to a court's statutory or constitutional power to adjudicate a case. *United States v. Cotton*, 535 U. S. 625, 630 (2002). Federal courts have subject-matter jurisdiction over prosecutions alleging violations of the federal criminal laws. 18 U.S.C. § 3231. Gilkey was charged with violating 18 U.S.C. §§ 922(g), 922(k) and 502(a)(2)-(3), each of which is a federal criminal statute. Therefore, the Court had federal subject-matter jurisdiction.

Claim 3 is without merit and is DISMISSED.

\* \* \* \*

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), § 2255 Rules. The Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Movant's conviction and sentence are valid, and, therefore, his § 2255 Motion is DENIED. Judgment shall be entered for the United States.

## IV.     APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

There can be no question that the issues raised in Movant's Amended § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Movant on the issues raised in his Amended § 2255 Motion does not deserve attention, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good

faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[6]

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S.THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 26, 2015.

---

[6] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.